UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KARI WOODS, HALI WOODS,** } | |
| **LORETTA COTTON, individually and for** } | |
| **a class of similarly situated persons or** } | |
| **entities,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.:  2:15-cv-00493-RDP |
| } | |
| **THE CITY OF COLUMBIANA,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

**I.   Introduction**

This case is before the court on Defendant's Motion to Dismiss (Doc. # 7), filed April 20, 2015. The Motion is fully briefed. (Docs. # 7, 8, 15).[1] After careful review, and for the reasons outlined below, the court concludes that the Motion (Doc. # 7) is due to be granted in part and denied in part.

**II.  Procedural History**

Plaintiffs Kari Woods, Hali Woods, and Loretta Cotton have brought this case pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202, alleging violations of their constitutional rights under the Fourth, Sixth, Eighth, and Fourteenth Amendments, and seeking damages as well as declaratory and injunctive relief on behalf of themselves and others similarly situated. (Doc. # 1). These claims arise out of alleged policies and practices by Defendant City

---

[1] Defendant did not file a reply brief.

of Columbiana ("Columbiana" or "Defendant") that Plaintiffs claim violated their civil and constitutional rights. (*Id.*).

Plaintiffs initiated this lawsuit by filing their Complaint on March 25, 2015. (Doc. # 1). The Complaint asserts the following claims against Columbiana: (1) a Section 1983 claim for denial of due process under the Fourteenth Amendment (Count One); (2) a Section 1983 claim for unlawful seizure in violation of the Fourth Amendment (Count Two); (3) a Section 1983 claim for violation of the Sixth Amendment right to counsel (Count Three); (4) a Section 1983 claim for violation of the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishment (Count Four); (5) a Section 1983 claim for denial of equal protection under the Fourteenth Amendment (Count Five); and (6) a claim for declarative and injunctive relief (Count Six). (*Id.*). Plaintiffs seek actual and punitive damages, retrospective declarative relief, prospective injunctive relief, and attorneys' fees. (*Id.*).

In response to the Complaint, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 7). In its Memorandum Brief, Defendant specifically requests this court to dismiss Plaintiffs' punitive damages demand, find that Plaintiff Loretta Cotton's claims are time barred, and dismiss all of the Section 1983 claims on the grounds that the Complaint does not plausibly plead municipal liability. (Doc. # 8). In addition, Columbiana reserved the right to later challenge Plaintiffs' equitable and class claims. (*Id.*).

**III.   Factual Allegations**

The facts plausibly alleged in Plaintiffs' Complaint (Doc. # 1) are taken as true for the purpose of resolving Defendant's Motion to Dismiss (Doc. # 7). *See, e.g.*, *Mays v. United States Postal Service*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996) ("A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6)

motion, the court must assume that all the factual allegations set forth in the complaint are true.").

## A.     General Background

Columbiana contracted with non-party Judicial Corrections Services, Inc. ("JCS"), a "for profit" enterprise that similarly has previously contracted with over 100 other cities and towns throughout Alabama. (Doc. # 1 at ¶ 11). JCS marketed an approach that emphasized its fees will be paid by an "offender" before a city or town's municipal court, and that JCS will improve collections of court fines and costs at no extra expense to a municipality. (*Id.*). Certain employees of JCS are labeled "Probation Officers"; they must be non-felons, twenty-one years of age or older, have at least two years of college, and complete forty hours of training by JCS. (*Id.* at ¶ 13).[2]

Columbiana's mayor signed a contract with JCS, and the city council approved it, effective August 16, 2006. (Doc. # 1 at ¶ 16). Pursuant to the contract, if a person before the Columbiana Municipal Court is unable to fully pay costs or fines, that person is automatically placed on probation with JCS, even if no jail sentence is adjudicated. (*Id.* at ¶ 17). The contract mandates that every probation order[3] issued by the Columbiana Municipal Court directs probationers to pay JCS the offense fines, court costs, and an additional, monthly fee. (*Id.* at ¶¶ 15, 17). If a person on probation cannot keep up payments to JCS, that person is "typically" arrested based on a charge of Failure to Appear or Failure to Obey Court Order. (*Id.* at ¶ 20). No determination of contempt or willfulness is made prior to arrests and incarceration on these charges, and additional costs are added to the total owed without any findings of why probation

---

[2] There is no requirement of criminal justice or legal training, social work education, or the meeting of minimum law enforcement standards. (*Id.* at ¶ 13).

[3] Plaintiffs allege that probation orders are prepared by JCS.

was revoked. (*Id.*). Moreover, the indigence or possible indigency of an "offender" is not taken into account, and no counsel is provided for indigent "offenders." (*Id.* at ¶¶ 17, 24, 25).

Defendant's city council and mayor control Columbiana's policymaking, hire the municipal court judge, and contract for services at the municipal court—including such matters as the hiring of JCS. (Doc. # 1 at ¶ 21). JCS employees attend each municipal court session and are referred to as "probation officers" (despite not enjoying that authorization under Alabama law). (*Id.* at ¶ 22). Columbiana does not permit "offenders" to pay fines to the city clerk's office; instead, offenders are required to make all payments to JCS at its office located in the City of Childersburg. (*Id.*). The actions of Defendant and JCS routinely result in court costs and fines exceeding the $500 statutory maximum for municipal courts, and the periods of probation exceeded the two-year statutory maximum. (*Id.* at ¶ 26). Plaintiffs also allege that these actions also typically result in Defendant arresting and incarcerating individuals without jurisdiction to do so. (*Id.*).

B.     **Plaintiff Kari Woods**

Plaintiff Kari Woods ("Ms. K. Woods") is a resident of Heflin, Alabama. (Doc. # 1 at ¶ 36). Ms. K. Woods appeared before the Columbiana Municipal Court on January 14, 2014, on charges of "switched tag." (*Id.* at ¶¶ 36, 39). The Columbiana Municipal Court fined Ms. K. Woods $20, assessed $166 in court costs, but she received no jail sentence. (*Id.* at ¶ 39). Because Ms. K. Woods could not pay the full $186, she was placed on probation with JCS. (*Id.* at ¶ 41). JCS required her to pay an additional $35 per month, and a $10 start-up fee. (*Id.*).

Ms. K. Woods maintains that she was and has been indigent, and, therefore, unable to pay her fines and fees.[4] (Doc. # 1 at ¶¶ 40-42, 56). She claims JCS had knowledge of her indigence.

---

[4] Ms. K. Woods's car broke down, she lost her job, and she moved into her grandmother's house with her five-year-old child. (*Id.* at ¶¶ 42, 44).

(*Id.* at ¶ 56).  The JCS fees compounded to an amount greater than $1,000.  (*Id.* at ¶¶ 43, 55). Until paying those fees, Ms. Woods cannot satisfy the "switched tag" ticket or her probation. (*Id.* at ¶ 55).

JCS mailed to Ms. K. Woods's previous address a "Revocation of Probation" letter and failure to report letter.  (Doc. # 1 at ¶¶ 45-46).  Both were returned as undeliverable.  (*Id.*) Although the letters were returned as undeliverable, JCS reported that Ms. K. Woods had failed to appear for a court hearing, and requested the Municipal Court of Columbiana to issue a warrant for her arrest.  (*Id.* at ¶ 47).  A warrant was issued, and, on November 12, 2014, six Columbiana police officers stormed Ms. K. Woods's grandmother's house and arrested Ms. K. Woods.  (*Id.* at ¶ 50).  The arresting officers stated they were looking for "illegal drugs or weapons."  (*Id.* at ¶ 51).  Throughout the entire ordeal, Ms. K. Woods was never informed of her right to counsel, or represented by counsel.  (*Id.* at ¶ 49).  Nevertheless, Ms. Woods was released after spending two nights in jail when a private attorney working *pro bono* filed a *habeas corpus* petition in Shelby County Circuit Court requesting her release. (Doc. # 1 at ¶¶ 53-54).

### C. Plaintiff Hali Woods

Plaintiff Hali Woods ("Ms. H. Woods") was sixteen years old on June 27, 2013, when she was stopped and ticketed by a Columbiana police officer for driving an automobile without wearing a seatbelt.  (Doc. # 1 at ¶ 58).  Ms. H. Woods appeared before the Columbiana Municipal Court on August 13, 2013, pled guilty, and testified that she did not have the money for the ticket.  (*Id.* at ¶ 61).  Further, Ms. H. Woods explained that she had no job and lived with her mother whose only source of income was disability payments.  (*Id.*).  The Columbiana Municipal Court fined her $25 and assessed $16 in court costs, but did not adjudicate a jail sentence.  (*Id.* at ¶ 62).  Ms. H. Woods was never given alternatives to satisfy the offense or fines

despite both her age and indigency; at no point was she informed of her right to counsel. (*Id.* at ¶¶ 63, 71).

Ms. H. Woods was placed on probation with JCS, which charged her a $10 setup fee and $35 monthly "probation" fee, took a mug shot of her, and threatened her with jail if she did not pay the fees. (Doc. # 1 at ¶¶ 64-65). By the end of 2013, Ms. H. Woods had paid $20. (*Id.* at ¶ 66). On February 26, 2016, Ms. H. Woods appeared at the "Columbiana City Court"[5] and presented a hardship form attesting to her indigency. (*Id.* at ¶ 67). She also paid the $41 owed for the fine and court costs assessed for the ticket. (*Id.*). However, JCS "reinstated" Ms. H. Woods's probation and demanded that she still had to pay JCS $130 to terminate her probation. (*Id.* at ¶¶ 67-68). Ms. H. Woods paid JCS $130 (which was loaned to her) on April 14, 2014. (*Id.* at ¶ 69).

### D.    Plaintiff Loretta Cotton

Plaintiff Loretta Cotton ("Ms. Cotton") is a resident of Columbiana, Alabama. (Doc. # 1 at ¶ 73). In the spring of 2012, Ms. Cotton received a letter from Columbiana directing her to appear before the Columbiana Municipal Court. (*Id.* at ¶ 74). On May 8, 2012, Ms. Cotton appeared at the court and was informed that she owed fines and court costs of $573 for a possession charge from 2006. (*Id.* at ¶¶ 75, 76). Ms. Cotton was told that she would go to jail if she did not pay the $573. (*Id.* at ¶ 76).

Ms. Cotton was unable to pay $573 at once, and was placed on probation with JCS. (Doc. # 1 at ¶ 78). JCS charged her an additional $35 per month to collect the fines owed.[6] (*Id.*).

---

[5] The Complaint does not clearly indicate whether this court is the same as or different from the Columbiana Municipal Court. (*See* Doc. # 1).

[6] The Complaint does not state whether Ms. Cotton was charged a $10 startup fee.

Columbiana and JCS knew Ms. Cotton was indigent, and that at all times since 2012 she has lived below the poverty level. (*Id.* at ¶ 79).

In the summer of 2013, Ms. Cotton received a ticket in Columbiana for driving with a suspended license. (Doc. # 1 at ¶ 80). She again appeared before the Columbiana Municipal Court, where she was assessed a fine and court costs totaling $416 for the ticket (and a ten-day suspended sentence). (*Id.* at ¶ 81). Again, Ms. Cotton was placed on probation with JCS and ordered to pay the additional monthly $35 fee. (*Id.* at ¶ 82).

While on probation, Ms. Cotton lost her minimum-wage job. (Doc. # 1 at ¶¶ 79, 83). Ms. Cotton had previously informed the court that she was in and out of employment and had no money to pay the fines, but she was never informed of her right to counsel or told of hardship forms that would assist in substantiating her indigence. (*Id.* at ¶ 84). Likewise, Ms. Cotton was never given alternative forms of punishment. (*Id.*). In January 2014, Ms. Cotton was told that she had until her next court date to pay her fines and JCS fees in full, or she would "sit in jail."[7] (*Id.* at ¶ 85).

## IV. Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S.

---

[7] Defendant attached to its Motion an exhibit indicating that Ms. Cotton was released from probation (presumably, for the possession charge) on May 14, 2013. (Doc. # 7-2 at p. 5).

at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Intl. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).  That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556.  Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682).  If the court determines that well-pleaded

facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

**V.     Analysis**

Defendant has moved pursuant to Rule 12(b)(6) for dismissal of Plaintiffs' Section 1983 claims and demand for punitive damages, and argues that Plaintiff Loretta Cotton's claims are time barred under Alabama's Section 1983 statute of limitations. (Docs. # 7, 8).

   **A.     Defendant Columbiana is subject to Section 1983 liability**

Columbiana argues that it is not subject to Section 1983 municipal liability in this case. (Doc. # 8). To state a claim for relief under Section 1983, Plaintiffs "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). However, municipalities are only liable under Section 1983 when a municipal employee's allegedly unconstitutional actions are undertaken "in execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may establish the existence of a "policy" by identifying "(1) an officially promulgated [municipal] policy or (2) an official custom or practice of the [municipality] shown through the repeated acts of a final policymaker." *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). In both instances, a plaintiff must illustrate that the governmental entity (here, a municipality) has "authority and responsibility over the governmental function in issue." *Id.* at 1330. Furthermore, the policy or custom must be the "moving force" behind the complained-of constitutional deprivations. *Monell*, 436 U.S. at 694.

Columbiana contends that it does not possess the authority necessary for Section 1983 liability to attach, pointing to the organization of the Alabama court system and the Columbiana Municipal Court's position within it. (Doc. # 8). Under Alabama Code § 12-1-2, "[t]he judicial power of the state is vested exclusively in a unified judicial system which shall consist of . . . such municipal courts as may be provided by law." As such, the Alabama Supreme Court, not Columbiana, has authority over the Columbiana Municipal Court. Likewise, under Alabama Code § 12-14-13, municipal courts themselves are bestowed with control over the application and implementation of probation. Defendant seizes upon this distribution of power, contending that it cannot be liable under Section 1983 if it has neither policymaking authority over the Columbiana Municipal Court, nor control over the probationary process. (Doc. # 8). Defendant argues that all it did was contract with JCS to provide probation services, as allowed by law, but that it "had no legal duty or authority to determine the policies or procedures of its court. The City's authority starts and ends with its contract with JCS." (Doc. # 8). After careful consideration, the court concludes that, at least on the pleadings, this argument misses the target.

Municipalities like Columbiana are responsible for furnishing "appropriate facilities and necessary supportive personnel" to municipal courts, including "provid[ing] for probation services." Ala. Code § 12-14-2. "Necessarily implied" by that assignment of responsibility is "[t]he power to contract with a private firm to aid in the collection of delinquent municipal court fines . . . ."[8] *Wilkins v. Dan Haggerty & Assocs., Inc.*, 672 So.2d 507, 510 (Ala. 1995).

Plaintiffs contend that, in carrying out its duty to assist and support the Columbiana Municipal Court, Columbiana entered into a contract that essentially "handcuffed" the autonomy of the municipal court and imbued JCS with a power unchecked by judicial safeguards

---

[8] Also, Alabama Code § 11-40-1 "expressly grants to cities the power to enter into contracts in furtherance of their governmental functions." *Wilkins v. Dan Haggerty & Assocs., Inc.*, 672 So.2d 507, 510 (Ala. 1995).

(procedural and substantive).  (*See* Doc. # 1 at ¶¶ 11, 14-27, 29-33).  Indeed, Plaintiffs plausibly allege that the policy (*i.e.*, contracting out probation services) of a state actor (Columbiana) was the "moving force" behind their constitutional deprivations.[9]  *Monell*, 436 U.S. at 694.  The court concludes that these allegations are sufficient to satisfy the pleading requirements for claims under Section 1983.

### B.     Defendant Columbiana cannot be held liable for punitive damages

Plaintiffs request this court to award them punitive damages.  (Doc. # 1).  However, "[i]t is well-settled that local government entities [such as municipalities] are immune from punitive damages in [an] action brought pursuant to 42 U.S.C. § 1983."  *Shaw v. Coosa County Commn.*, 33 F. Supp. 2d 1285, 1287-88 (M.D. Ala. 2004) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)) (additional citations omitted).  Columbiana is a municipality.  This is not a close question.  Plaintiffs' punitive damages claim is due to be dismissed as to Columbiana.[10]

---

[9] In its brief, Columbiana alludes to possible immunities without specifically naming those.  (Doc. # 8) ("Although a municipality enjoys no federal immunity per se, if its final decision makers are cloaked with individual immunity, then, among other things, a proximate cause analysis necessarily ensues.").  The United Supreme Court has made it "quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit— either absolute or qualified—under § 1983."  *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167 (1993) (citing *Monell* and *Owen v. City of Independence*, 445 U.S. 662, 650 (1980)).  It would be a *non sequitur* for a proximate cause analysis concerning a municipality's immunity to arise simply because a municipality's final decision-making authority is clothed in immunity.  On the other hand, if Plaintiffs had sued, for example, a Columbiana Municipal Judge, or Columbiana's mayor, then judicial or executive immunities might be a viable defense for this court to consider.  But, the only defendant named here is the City of Columbiana.  Accordingly, any further consideration of immunities would merely be an academic exercise.  *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).

[10] Plaintiffs state that the "current complaint lists Columbiana as the sole defendant and punitive damages are not requested from Columbiana, but if discovery reveals other actors violating the Plaintiffs' constitutional rights while acting in their personal capacity, punitive damages may be sought against those actors."  (Doc. # 15).  Any future claims against persons not parties to this case must be made via an amended complaint.  If such an amended pleading is filed, it must contain a damages claim therein.

### C.     Plaintiff Loretta Cotton's claims are timely

Defendant contends that Plaintiff Cotton's claims are time barred.  (Doc. # 8).  When dealing with a Section 1983 claim, federal courts "borrow" the appropriate state statute of limitations; however, federal standards govern a determination of when the federal cause of action accrues.  *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990) (citation omitted).  The statute of limitations for a Section 1983 claim brought in Alabama is two years.  *See Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir. 1992).  However, under federal law, the statute does not accrue until the plaintiff knows or has reason to know of the injury that is the basis of the action.  *Corn*, 905 F.2d at 588; *accord Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) ("Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured . . . . [n]or will a Section 1983 action accrue until the plaintiff is aware or should have been aware who has inflicted the injury."); *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987) ("Thus, the statute of limitations begins to run from the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.").

An exception to the federal standard for accrual of a claim is the continuing violations doctrine, which the Eleventh Circuit has applied to Section 1983 cases.  *See, e.g.*, *Smith v. Shorstein*, 217 Fed. Appx. 877, 881 (11th Cir. 2007) (citing *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (*per curiam*)).  "Under the continuing violations doctrine, the statute of limitations is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period."  *Natl. Parks & Conservation Assn., Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982)).  In other words, the doctrine "permits a

plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Robinson v. United States*, 327 Fed. Appx. 816, 818 (11th Cir. 2007) (citing *Hipp v. Liberty Natl. Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001)). "When the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." *Id.* (citations omitted). "The critical distinction in the continuing violation analysis . . . is whether the plaintiff[] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Lovett*, 327 F.3d at 1183 (quoting *Knight v. Columbus, Ga.*, 19 F.3d 579, 580-81 (11th Cir. 1994)) (changes in original). "Where a continuing violation is found, the plaintiff[] can recover for any violations for which the statute of limitations has not expired." *Knight*, 19 F.3d at 581.

Here, Ms. Cotton appeared before the Columbiana Municipal Court, was informed she owed $573 for possession, and was placed on probation with JCS on May 8, 2012. (Doc. # 1 at ¶ 75). Accordingly, Ms. Cotton knew or had reason to know of the injury that is the basis of this action on May 8, 2012. *Corn*, 905 F.2d at 588. And, this case was initiated on May 12, 2015—more than three years later. Thus, it is readily apparent that unless the continuing violations doctrine applies here, at least a portion of Ms. Cotton's claims would be time barred.

Indeed, Ms. Cotton's probationary period (presumably for the possession charge) ran from May 8, 2012, until she paid her total fine balance—including the fines owed to JCS—on May 14, 2013. (*See* Doc. # 1 at ¶¶ 75, 78); (Doc. # 7-2 at p. 5). Stated differently, the offending conduct began May 8, 2012, and ceased on May 14, 2013. Ms. Cotton's "cause of action accrue[d], and the limitation period [began] to run, at the time the unlawful conduct ceased."[11]

---

[11] Ms. Cotton's claims may be compared to a false imprisonment claim brought under Section 1983, where "the cause of action does not accrue until the release of the imprisoned party." *Donaldson v. O'Connor*, 493 F.2d

*Robinson*, 327 Fed. Appx. at 818. During each month of Ms. Cotton's probationary period, she was fined an additional $35, and was under the threat of being jailed if she did not pay. (*See* Doc. # 1 at ¶¶ 82, 85). These factual allegations do not involve the "present consequence of a one time violation," but instead allege a continuing violation through and including March 14, 2013. *Lovett*, 327 F.3d at 1183. *Cf. Bazemore v. Friday*, 478 U.S. 385 (1986) (holding that pre-Act pay differences between white and black employees, which were the result of a previously segregated work force and disparate pay scale, constitute continuing violations actionable under Title VII each time a pay check delivered disparate pay to a minority based upon the lingering effects of that pre-Act discrimination). Accordingly, the court concludes that the Complaint filed March 12, 2015, presents a timely Section 1983 claim.

### VI. Conclusion

For these reasons, Defendant's Motion to Dismiss (Doc. # 7) is due to be granted in part and denied in part. A separate order shall be entered.

**DONE** and **ORDERED** this February 5, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

507, 529 (5th Cir. 1974), *vacated on other grounds by O'Connor v. Donaldson*, 422 U.S. 563 (1975). Like a released prisoner, Ms. Cotton's claims did not accrue until her probation ended.