UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HALI WOODS, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | Case No.: 2:15-cv-00493-RDP |
| } | |
| **JUDICIAL CORRECTION SERVICES,** } | |
| **INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## **MEMORANDUM OPINION**

This case is before the court on (1) CHC Companies, LLC's ("CHC")[1] and Correct Care Solutions, LLC's ("CCS") Motion for Summary Judgment (Doc. # 176), and (2) CHC's and CCS's Motion to Strike Plaintiffs' Exhibits and Supplemental Briefing (Doc. # 205). Both Motions have been fully briefed. (Docs. # 194, 206, and Docs # 208, 209). The Motions are related, and the court will first address the Motion to Strike.

**I.     The Motion to Strike**

CHC and CCS move the court to strike Exhibits 19 and 20 (Docs. # 195-21 and 195-22) to Plaintiffs' Response in Opposition to CHC's and CCS's Motion for Summary Judgment. (Doc. # 194). They argue that the exhibits are a transparent attempt to evade the court's page limitation for summary judgment briefs. (Doc. # 205). They also argue that neither document is properly an "exhibit" because they do not constitute evidence. (*Id.*).

Plaintiffs respond that the exhibits were an attempt to simplify the presentation of issues to the court due to its expressed concern over matters of efficiency in this series of similar cases.

---

[1] CHC Companies, LLC was formerly known as CHC Companies, Inc. (Doc. # 149 at 1).

(Doc. # 108 at 1-2). They state that they filed Exhibits 19 and 20 in exhibit form, rather than as part of their brief, because they expect to file the same exhibits in other related cases, thereby reducing the ongoing burden on the court. (*Id.*).

Defendants' reply notes that Plaintiffs' opposition to the Motion to Strike (Doc. # 208) concedes those "exhibits" contain additional facts and argument. (Doc. # 209).

The court has examined Exhibits 19 and 20 and agrees with Defendants that neither document constitutes Rule 56 evidence. Rather, the documents consist of additional briefing and argument. The court will certainly not consider them as evidence, and sees no need for them to be refiled. When the court envisioned that materials from this or other cases are to be used to promote efficiency, the court contemplated that *evidence* and the court's opinions and orders would be applied in multiple cases. That being said, the court is fully capable of disregarding irrelevant or improper information contained in the record on summary judgment. Accordingly, the Motion to Strike is due to be denied as moot.

## II.     The Rule 56 Evidence and the Undisputed Facts

### A.     The Defendants' Corporate Relationship

CHC is a wholly owned subsidiary of Correctional Healthcare Holding Company, Inc. (Doc. # 44; Doc. # 180-45). Among other companies, CHC wholly owns Judicial Correction Services, Inc. ("JCS") and Correctional Healthcare Companies, Inc. (*Id.*). CHC provides administrative and employment services for its subsidiaries. (*Id.*).

CCS is a wholly owned subsidiary of CCS Intermediate Holdings, LLC, which also owns a parent company of CHC and, in turn, JCS. (Doc. # 45; Doc. # 180-45). CCS is not a parent to either CHC or JCS. (*Id.*).[2]

---

[2] As of approximately July 2014, CHC's parent and CCS were both owned by the same holding company. (Doc. # 180-29 at 39-40; Doc. # 180-41 at 60-61). In June 2014, CCS and Jessamine Healthcare, Inc. were placed

2

On September 30, 2011, CHC, Judicial Merger Sub, Inc. ("Merger Sub"), JCS, and Jarrett Gorlin entered into an Agreement and Plan of Merger. (Doc. # 180-27 at 2-61). Under the Merger Agreement, CHC was designated the "Purchaser." (Doc. # 180-27 at 9). "Merger Sub" was defined as a wholly owned subsidiary of CHC. (*Id.*). The "Company" was defined as JCS. (*Id.*).

Pursuant to the Agreement, a "Reverse Subsidiary Merger" was consummated. (Doc. # 180-27). That is, CHC's subsidiary, Merger Sub, was merged into JCS. (Doc. # 180-27 at 10). The Agreement provides that, upon the merger, "the separate existence of Merger Sub shall cease, and the Company [JCS] shall be the surviving corporation ("the Surviving Corporation"). (*Id.*; *see also* Doc. # 180-28 at 33 (noting that under the Merger Agreement, Merger Sub and JCS merged, and JCS was the resulting surviving corporation)). The Certificate of Merger also defines the JCS as the "Surviving Corporation," and notes that it "will continue its existence as said surviving corporation under its present name … ." (Doc. # 180-28). The Agreement further provides that, "[f]rom and after the Effective Time [of the merger], the Surviving Corporation [JCS] shall succeed to all assets, rights, privileges, powers and franchises of, and be subject to all of the liabilities, restriction, disabilities and duties of, the Company and Merger Sub, all as provided under the Delaware Act." (*Id.*).[3]

---

under common ownership of a newly formed entity, CCS Intermediate Holdings, which is now called Correct Care Solutions Group Holdings. (Doc. # 180-41 at 60). That transaction was not a merger, but rather an ownership change. (Doc. # 180-41 at 61, 64).

As of 2016, CCS-CHC Holdings, LLC is the parent company of Correct Care Solutions Group Holdings, LLC. (Doc. # 180-41 at 28-30). Correct Care Solutions Group Holdings, LLC has two direct subsidiaries, CCS and Jessamine Healthcare, Inc. (Doc. # 180-41 at 13). Those subsidiaries, in turn, have subsidiaries, and some of those entities, in turn, have subsidiaries. (Id.). For example, CCS has two subsidiaries, Correct Care Holdings, LLC and League Medical Concepts, LP. (Id.). CHC is a subsidiary of Jessamine Healthcare. (Doc. # 180-41 at 50-51, 57). That is, CHC is not a subsidiary of CCS. (Doc. # 180-45).

[3] A reverse subsidiary merger, or reverse triangular merger, occurs where "a parent corporation [acquires] a target corporation by setting up a subsidiary to merge with the target." *In re Inergy L.P.*, No. 5816-VCP, 2010 WL 4273197, at *11 (Del. Ct. Chancery Oct. 29, 2010). This type of merger is used sometimes "to avoid direct exposure

The merger agreement required certain JCS executives to resign from JCS. (See Doc. # 180-27 at 17). It also required those executives to enter into employment agreements and non-compete agreements. (Doc. # 180-27 at 45). Under the form Employment Agreement, the former JCS executives became employed by CHC, but the agreement defined their responsibilities as to "serve the Company and its Affiliates." (Doc. # 180-28 at 18). The "Position with the Company" section of the Agreement contains language indicating that, "for so long as JCS constitutes a wholly-owned subsidiary of the Company, Executive shall serve as the _____, and shall report to _____." (*Id.*). The following ten employees were required to execute these employment agreements with CHC: Robert McMichael, Jarrett Gorlin, Dennis Sanders, Dennis Moon, Charlie Farrahar, Steve Pelts, Kevin Eagan, Ronda Cole, Beth Ivey, and Dennis Kirklin. (Doc. # 180-28 at 4). The other JCS employees were not employed by CHC. (Doc. # 180-29 at 35-36).

The form Non-Competition and Non-Solicitation Agreement presented to the ten executives recites that the agreement is made "by and among" CHC, JCS, and the former stockholder of JCS. (Doc. # 180-28). It provides protections to both CHC and JCS. (Doc. # 180-28).

In approximately 2013, CHC started handling payroll for its five subsidiaries, including JCS. (Doc. # 180-29 at 36, 156-57; Doc. #180-41 at 45-46). As of early 2015, after CCS and CHC came under the same holding company, certain employees maintained positions with both entities. (Doc. # 180-29 at 39-40). A CCS entity handled the payroll, accounting, legal, and information technology for all of the entities under the CCS umbrella. (Doc. # 180-29 at 49-50; Doc. # 180-45; Doc. # 195-15; Doc. # 195-16). Pursuant to this arrangement, an attorney

---

to the liabilities of the target corporation." 14 Fletcher Cyc. Corp. § 7011 (2009). Reverse triangular mergers are "recognized, accepted, and fairly routine." *Baldwin Enters., Inc. v. Retail Ventures, Inc.*, 2010 WL 624261, at *5-6 (S.D. Ill. Feb. 18, 2010) (citing and quoting *Giovanini v. United States*, 9 F.3d 783, 784 n. 6 (9th Cir. 1993); *Saginaw Property, LLC v. Value City Dep't Stores, LLC*, 2009 WL 3536616, at *8 (E.D. Mich. Oct. 30, 2009); and *Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1037-38 (S.D. Miss. 2005)).

employed by CCS executed a settlement agreement on behalf of JCS. (Doc. # 195-17 at 9, 19). Certain employees also signed non-compete agreements where the "Employer" is defined as CCS Intermediate Holdings, LLC and/or any of its current or future affiliates, subsidiaries, … ." (Doc. # 180-29 at 149-50).

In November of 2015, a uniform set of statutory officers and directors was put in place for all of the subsidiaries of the holding company, including JCS, purportedly for the convenience of signing documents. (Doc. # 180-41 at 18, 28). This function differs from the practical operational management of these entities. (Doc. # 180-41 at 33).[4]

**B.    JCS Operations**

On August 16, 2006, the Mayor of the City of Columbiana and Judicial Correction Services, Inc. ("JCS") signed an agreement for JCS to provide probation services for the Columbiana Municipal Court. (Doc. # 143 at ¶¶ 17, 27).

JCS issued a Training Manual for Alabama which provided information on the day-to-day operations, training, and policies. (Doc. # 180-35). New employees received an initial week-long training period which was spent reviewing the manual. (Doc. # 180-37 at 68). The October 24, 2013 version of the Training Manual does not mention either CHC or CCS. (*Id.*). That version of the Training Manual contains a sample Affidavit of Substantial Hardship. (Doc. # 180-35 at 24). The Training Manual sets forth the job responsibilities and procedures for the JCS employees in Alabama. (Doc. # 180-35). JCS employees received additional training every three months. (Doc. # 180-37 at 68). JCS maintained Standard Operating Procedures manuals for each

---

[4] Plaintiffs cite to two unsworn documents as "evidence" that CHC and CCS merged. (Doc. # 194 at 20 (citing *Ray et al v. Judicial Corrections Services Inc. et al.*, Case No. 2:12-cv-02819-RDP, Doc. # 647-8)). Although these documents refer to a merger transaction, neither involved the "CHC" defendant in this case, CHC Companies, LLC. Those documents define CHC as Correctional Healthcare Companies, which is not a party in this case. Rather, the "CHC" in this case is CHC Companies, LLC f/k/a CHC Companies, Inc., a different company. (Compare *Ray* Doc. # 647-8 with Docs. # 149 and 180-45).

office which corresponded with the different courts in which JCS operated.  (Doc. # 180-37 at 80-81).

On or about April 15, 2015, Columbiana terminated its contract with JCS. (Doc. # 143 at ¶ 27).

### C. Plaintiffs' JCS Probations

After receiving a ticket in Columbiana on June 27, 2013, Plaintiff Hali Woods served a probationary term under JCS's supervision from August 13, 2013 to April 22, 2014. (Docs. # 180-5 and 180-6).  And after various, escalating driving offenses committed in Columbiana on January 14, 2012, February 28, 2013, April 8, 2013, and April 10, 2013, Plaintiff Susan Douglas served probationary terms under JCS supervision from December 12, 2012 to April 9, 2013, and from May 28, 2013 to March 10, 2015. (Docs. # 180-7 through 180-25).

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.  Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV. Analysis

All of the claims against Defendants CHC and CCS in Plaintiffs' Third Amended Complaint are brought pursuant to 42 U.S.C. § 1983. (Doc. # 143). Section 1983 does not authorize vicarious liability under the doctrine of *respondeat superior*; therefore, to establish liability under the statute, a plaintiff must establish that the named defendant caused the violation of his or her constitutional right. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978).

CHC and CCS are both private entities. A private entity may under certain circumstances be held liable under § 1983. *Martinez v. Ashtin Leasing, Inc.*, 417 F.App'x. 883, 885 (11th Cir. 2011) (citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276–77 (11th Cir. 2003)). But, "[t]here are three requirements for imposing § 1983 liability on a private entity acting as a municipality for its policies or customs. "[A] plaintiff must show: (1) that his constitutional rights were violated; (2) that the [entity] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Harris v. S. Health Partners, Inc.*, 2013 WL 2387740, at *9 (M.D. Ga. May 30, 2013)

(quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Thus, liability in a § 1983 action only attaches where the entity itself causes the constitutional violation at issue. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005). Therefore, Plaintiffs must show that CHC and/or CCS caused the alleged violation of their constitutional rights.

In the four page argument section of Plaintiffs' brief seeking to establish that CHC and CCS are liable for JCS's conduct, Plaintiffs cite one case, *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), for the unremarkable proposition that "private persons jointly engaged with state officials in a challenged action, are acting 'under color' of law for purposes of § 1983 action." (Doc. # 194 at 24). That does not, however, establish that a parent corporation -- which is what CHC was to JCS -- is liable for the conduct of its subsidiary. Nor does it establish that an even more remote corporation -- which is what CCS was in relation to JCS -- is liable for the conduct of its related company. Plaintiffs have utterly failed to address in their briefing the issue of whether CHC or CCS caused the constitutional violations at issue in this case. In fact, even in the additional fourteen pages of argument contained in Exhibit 20, Plaintiffs merely use the terms JCS and CHS interchangeably. (Doc. # 195-22 at 1 (all references to 'JCS' in this document are attributed to CHC" after the September 30, 2011 transaction)).

Plaintiffs have not presented Rule 56 evidence that they had any contact with employees of CHC or CCS in relation to their probations. And, they concede that liability does not flow to CHC through successor liability or the single employer theory. (Doc. # 194 at 22). Rather, Plaintiffs argue that CHC is liable "through its use of the JCS name, trademark, and corporate policies which CHC continued to use until it sold the JCS division to CCS." (Doc. # 194 at 22). Plaintiffs further argue that CHC "took over JCS operations." (*Id.*). Plaintiffs insist that liability

9

flows to CHC because, they argue, CHC "purchased" JCS. (*Id.*; Doc. # 194 at 23 ("JCS was purchased by CHC")).

Plaintiffs' entire argument is based on a misconception regarding the transactions that took place involving JCS, CHC and CCS. This court has already found that "the Rule 56 evidence shows that CHC Companies did not operate as a mere continuation of JCS because JCS continued to operate as a separate subsidiary after the September 2011 transaction." (*Ray et al v. Judicial Corrections Services Inc. et al.*, Case No. 2:12-cv-02819-RDP, Doc. # 682 at 11). Similarly, the court has found that "JCS remain[ed] a separately operating entity separate and distinct from CCS and CHC Companies." (*Id.*, at 12). Rather than addressing and distinguishing these prior holdings, the only mention Plaintiffs make of CCS in their argument is the statement that "CHC is responsible for its actions from October 1, 2011 until it transferred JCS operations to CCS." (Doc. # 194 at 22). As discussed above, however, JCS was a subsidiary of CHC after the September 30, 2011 transaction, and later CCS and Jessamine Healthcare, Inc., a parent to CHC and in turn JCS, came under the common ownership of Correct Care Solutions Group Holdings, LLC. (Doc. # 180-41 at 13). The Rule 56 record does not present either a factual or legal basis for imposing §1983 liability on either CHC or CCS.

"'The mere existence of a parent-subsidiary relationship is not enough to impose liability on the parent.'" *Klein v. L-3 Commc'ns Corp.*, 2013 WL 5913776, at *7 (M.D. Ala. Nov. 1, 2013) (quoting *Wood v. S. Bell Tel. & Tel. Co.,* 725 F.Supp. 1244, 1249 (N.D. Ga. 1989)).

> It is well settled that a parent corporation, even one that owns all the stock of a subsidiary corporation is not subject to liability for the acts of its subsidiary unless the parent so controls the operation of the subsidiary as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation. *First Health, Inc. v. Blanton,* 585 So.2d 1331 (Ala.1991); *Simmons v. Clark Equip. Credit Corp.,* 554 So.2d 398 (Ala.1989); *Messick v. Moring,* 514 So.2d 892 (Ala.1987); *Duff v.*

> *Southern Ry.,* 496 So.2d 760 (Ala.1986); *Washburn v. Rabun,* 487 So.2d 1361 (Ala.1986); *American Pioneer Life Ins. Co. v. Sandlin,* 470 So.2d 657 (Ala.1985); *Ex parte Baker,* 432 So.2d 1281 (Ala.1983); *Cohen v. Williams,* 294 Ala. 417, 318 So.2d 279 (1975). However, the mere domination or control of a corporation by its stockholder cannot be enough to allow a piercing of the corporate veil; rather, there must be the added elements of misuse and harm or loss resulting from the misuse. *First Health, Inc. v. Blanton,* supra. Limited liability is one of the principal purposes for which the law has created the corporation. *Chenault v. Jamison,* 578 So.2d 1059 (Ala.1991). Thus, it is the law in Alabama that a plaintiff must first "pierce the corporate veil" before the parent corporation's liability may be established.

*In re Birmingham Asbestos Litig.*, 619 So. 2d 1360, 1362 (Ala. 1993). Plaintiffs have presented no argument under a "pierce the corporate veil" theory. (*See, generally*, Doc. # 194).

Plaintiffs continue to argue that CHC purchased JCS. As discussed in more detail above, it did not. CHC created a subsidiary, Merger Sub, and merged that subsidiary into JCS. Thus, JCS was the surviving corporation, and CHC always remained the parent of JCS. It neither "took over" nor "purchased" JCS. Doc. # 180-27 at 9-10).

Even if the 2011 transaction was a purchase (and, to be clear, it was not), "[a]s a general rule [in Alabama], a purchasing corporation is not liable for the debts and liabilities of the selling corporation." *Asher v. KCS Int'l, Inc.*, 659 So. 2d 598, 599 (Ala. 1995). *See also Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1456 (11th Cir. 1985). There are four exceptions to this general rule which permit a plaintiff to hold the purchasing corporation accountable for the liabilities of the selling corporation: "(1) there is an express agreement to assume the obligations of the transferor[;] (2) the transaction amounts to a de facto merger or consolidation of the two companies[;] (3) the transaction is a fraudulent attempt to escape liability[;] or (4) the transferee corporation is a mere continuation of the transferor." *Asher*, 659 So. 2d at 599 (quoting *Andrews v. John E. Smith's Sons Co.*, 369 So. 2d 781, 785 (Ala. 1979)). *See also Bud Antle*, 758 F.2d at 1456 (describing the same four exceptions, while stating that a buyer also can impliedly agree to assume obligations).

None of these exceptions apply here. The Rule 56 record contains no evidence of an agreement by CHC to assume JCS's liabilities. To the contrary, the merger agreement defines JCS as the surviving corporation and states that it is subject to all of the liabilities of JCS and the specially created merger sub. (Doc. # 180-27 at 10). The transaction was not a merger between CHC and JCS, as CHC remained the parent company. (*Id.*). Nor does the record contain evidence that the transaction was an attempt to avoid liability.

Returning to the § 1983 analysis, the Rule 56 record contains no evidence of a policy or custom adopted or imposed by CHC or CCS which affected Plaintiffs' constitutional rights. Plaintiffs admit that the "business model was put in place under a JCS form contract." (Doc. # 194 at 24). The contract between JCS and the City of Columbiana went into effect in 2006, long before the transactions in 2011 and 2014 which Plaintiffs contend impose liability on CHC and CCS. (Doc. # 143 at ¶¶ 17, 27). Plaintiffs have offered no Rule 56 evidence that decision-makers from CHC or CCS reviewed JCS's practices in Columbiana or modified them in any fashion. Moreover, Plaintiffs have failed to point to evidence showing that employees of CHC and/or CCS participated in a conspiracy with Columbiana officials. Plaintiffs have presented nothing more than a *respondeat superior* argument to attribute JCS's policies to CHC and CCS, based solely upon the continuing probation practices that occurred in Columbiana. This simply is insufficient to establish their liability under § 1983. *Monell*, 436 U.S. at 694.

IV.  **Conclusion**

For the foregoing reasons, and those explained in *Ray et al v. Judicial Corrections Services Inc. et al.*, Case No. 2:12-cv-02819-RDP, Doc. # 682, CHC's and CCS's Motion for Summary Judgment (Doc. # 176) is due to be granted, and their Motion to Strike (Doc. # 205) is due to be denied as moot. An order consistent with this Memorandum Opinion will be entered.

DONE and ORDERED this February 19, 2019.

                                                                  _____
                                                                  R. DAVID PROCTOR
                                                                  UNITED STATES DISTRICT JUDGE