## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **HALI WOODS, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:15-cv-00493-RDP** |
| | } | |
| **JUDICIAL CORRECTION SERVICES,** | } | |
| **INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the City of Columbiana's ("Defendant" or "the City")

Motion for Summary Judgment. (Doc. # 155). The Motion has been fully briefed. (Docs. # 156,

191, and 204). For the reasons discussed below, the Motion is due to be granted.

## I.      The Rule 56 Evidence and the Undisputed Facts[1]

In 2006, the City of Columbiana entered into a contract with Defendant Judicial

Correction Services, Inc. ("JCS"). (Doc. # 157). JCS was to provide probation services to the

Columbiana municipal court. (*Id.*). Municipal court Judge Mike Atchison first learned of JCS

from other municipalities that used its services. (Doc. # 160 at 24; Doc. # 58 at 38-40). Joanna

Seale, a municipal court magistrate and the court clerk, had also heard about JCS during

continuing education programs taken in connection with her magistrate position. (Doc. # 158 at

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .") (internal quotations omitted). The court views the facts in the light most favorable to the non-moving party. *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

37). Seale called Susan Fuqua, a magistrate in Hoover, Alabama, to ask about that court's experience with JCS. (*Id.* at 38-40). The Columbiana municipal court explored this option in an effort to save the court from having to hire another full time employee for the management of probation services. (*Id.* at 37).

JCS marketed itself as an offender-paid system which did not charge a municipality any money for its services. (Doc. # 180-31 at 193). It claimed that: (1) it could provide an incentive for probationers to pay their fines at a higher and faster rate, (2) its system increased partial payment rates, and (3) under its system, partial payments averaged eighty to ninety percent of the total fine. (Doc. # 193-2). Offenders placed on probation were generally ordered to pay JCS a one-time $10 set-up fee and $35 for each month of probation. (*See, e.g.*, Doc. # 168 at 16).

A.      **The Contract**

The JCS-Columbiana contract recites that it is between the City of Columbiana, the City's municipal court, and JCS. (Doc. # 157). Throughout the contract, the City and the court are referred to separately. (*Id.* at 3) ("JCS [is] willing to provide these services to the City and Court"; "the City and Court enter into this agreement with JCS."). The contract did not place any obligations on the municipal court. (*See* Doc. # 157). Under the contract, JCS agreed to "supervise all probated cases sentenced by the Court" and "supervise indigent cases when determined by the Court." (*Id.* at 4). JCS agreed to "comply with the Court's ruling in reference to sentencing or possible revocation of probation" and that "[a]ny modification to the original court sentence will be decided by the Court." (*Id.* at 4-5). The contract was signed on behalf of Columbiana by then-Mayor Allan Lowe, and on behalf of JCS by Kevin Egan, President of JCS Alabama. (Doc. # 157).

On April 15, 2015, Columbiana Mayor Stancil Handley terminated the JCS contract. (Doc. # 157-1 at 58).

### B.     Municipal Court Operations

Columbiana's municipal court generally held two monthly court sessions. (Doc. # 158 at 38, 55). However, a magistrate conducted bond hearings for all arrestees within forty-eight to seventy-two hours. (*Id.* at 24-25). At the bond hearing, the magistrate discussed the charges, the required bond, the defendant's rights, and the potential need for an attorney to be appointed for the defendant. (*Id.* at 27-28). The factors Magistrate Seale covered during the bond hearings are listed on a standard form issued by the state. (*Id.*).

Magistrate Seale also distributed form affidavits of substantial hardship in the municipal court. (*Id.* at 96-99). She gave the forms to a defendant either at the bond hearing or when an attorney was appointed. (*Id.* at 96-97). Judge Atchison was responsible for an investigation into a person's ability to pay, and this indigency review was to occur prior to any involvement by JCS. (Docs. # 158 at 93-96, # 158-1 at 53, 74, 93-94). Generally, most defendants who submitted a substantial hardship application had their fine waived and were not referred to JCS. (Doc. # 158 at 97). Occasionally, Judge Atchison referred a defendant who submitted the form to JCS, but instructed JCS to waive its fees for that individual. (Doc. # 160 at 28-29). These indigency determinations were made by Judge Atchison before any discussion regarding JCS probation. (Doc. # 158 at 96).

Judge Atchison maintained control in the municipal court. (Doc. # 160 at 19). In regards to JCS's work on probation matters, Judge Atchison testified that "JCS did what I [] ordered them to do." (*Id.*). Lisha Kidd, a JCS Probation Officer who worked with Childersburg, Harpersville, and Columbiana, testified that JCS's "number one goal was to always obey the

orders of the Court." (Doc. # 162 at 228). She further testified that JCS followed "a process that [was] established by the Court." (Doc. # 161 at 103). She noted that JCS "accepted everyone placed on probation through a judge." (Doc. # 162 at 228).

Not everyone appearing in the municipal court was placed on probation; if the offender could pay the fine within seven days, JCS was not involved and payments could be made through Magistrate Seale's office. (Doc. # 160 at 31, 59-60). Judge Atchison made that determination. (*Id.*). If the offender was placed on probation with JCS, payments had to be made through JCS. (Doc. # 158 at 126-27). Once all fines where paid, the probation ended. (Doc. # 180-31 at 262).

JCS kept the court informed regarding the status of probationers' payments and appointments with their Probation Officers. (Docs. # 66-7, # 66-1, # 66-12). Occasionally, when offenders repeatedly failed to meet with JCS and/or make the required payments, JCS would prepare a petition to revoke the probation informing the court of the missed appointments and/or payments. (Docs. # 158 at 71-72, 88-89, # 168 at 26). Any warrants were executed by either Judge Atchison or Magistrate Seale, but they issued pursuant to an order by Judge Atchison. (Docs. # 158 at 109-10, # 158-1 at 180, # 160 at 31-32, # 183-28 at 15, # 168 at 17). City police officers were involved in serving warrants, but "the warrant comes from the Court." (Docs. # 160 at 67, # 164 at 52). According to Judge Atchison, "JCS never put people in jail." (Doc. # 160 at 31-32). Judge Atchison testified that he "had complete control over that." (*Id.*).

Judge Atchison, Magistrate Seale, and other municipal court employees are paid by the City, and their W-2s are issued by the City. (Docs. # 19 at ¶ 3, # 160 at 51-52). The City paid Judge Atchison out of funds collected by the municipal court. (Doc. # 160 at 51-52).

City officials do not determine the disposition of any case, including guilt or innocence, fines, fees, or community service. (Docs. # 19 at ¶ 3, # 160 at 51-52). The Mayor testified that the Court was a department of the City. (Doc. # 193-3 at 29-30). However, Judge Atchison testified that it was not (Doc. # 160 at 51) and that, as a municipal judge, he operated "under the auspices of the Alabama Code and the Unified Judicial System." (Doc. # 160 at 51). The Eleventh Circuit recently held that probation procedure, indigency hearings, provision of counsel, sentences, and work programs, are all judicial acts. *McCullough v. Finley*, 907 F.3d 1324, 1331 (11th Cir. 2018) (citing *Owens v. Kelley*, 681 F.2d 1362, 1370 (11th Cir. 1982) (probation orders); *Eggar v. City of Livingston*, 40 F.3d 312, 315 (9th Cir. 1994) (duty to advise indigent defendants of their rights); *Davis v. Tarrant Cty.*, 565 F.3d 214, 223 (5th Cir. 2009) (appointment of counsel); *Harris v. Deveaux*, 780 F.2d 911, 915 (11th Cir. 1986) (sentencing)).

### C.     Plaintiff Hali Woods

On June 27, 2013, Woods was ticketed for failure to wear a seat belt while driving. (Doc. # 165 at 1). Her fine and court costs totaled $41. (*Id.*). On August 13, 2013, Woods pleaded guilty. (*Id.* at 3-4). The Explanation of Rights Plea of Guilty form she signed was Unified Judicial System Form C-44B. (*Id.* at 3-4). Judge Atchison placed Woods on probation, and ordered her to pay $51 per month until her financial obligations were met. (*Id.* at 5). Judge Atchison's Order of Probation also required Woods to pay JCS $35 for each month of probation and a $10 registration fee. (*Id.*). In Judge Atchison's August 13, 2013 Order of Probation, Woods was ordered to return to court on November 12, 2013 to show "completion of compliance." (*Id.*).[2]

---

[2] There is evidence that Judge Atchison signed the Orders of Probation in advance, and that the JCS Probation Officer filled them out before they were signed by the offender. (Doc. # 158 at 99-100).

Consistent with the August 13, 2013 Order of Probation, on October 24, 2013, Magistrate Seal signed a Summons to Appear requiring Woods to appear in the municipal court on November 12, 2013. (Doc. # 165 at 6). The Summons to Appear form was a State of Alabama Unified Judicial System Form MC-11D. (*Id.*). As of November 12, 2013, Woods had only paid $20. (*Id.* at 7). Therefore, Judge Atchison signed another Order of Probation reinstating Woods to probation, and requiring payment in full by January 22, 2014. (*Id.* at 8).

On January 8, 2014, Magistrate Seal signed another Summons to Appear requiring Woods to appear in the municipal court on January 28, 2014. (*Id.* at 9). The Summons to Appear form was again a State of Alabama Unified Judicial System Form MC-11D. (*Id.*). The January 28, 2014 court date was rescheduled (Doc. # 156 at 14 n.4), so on February 10, 2014, Magistrate Seal signed another Summons to Appear requiring Woods to appear in the municipal court on February 25, 2014. (Doc. # 165 at 9). The Summons to Appear form was again a State of Alabama Unified Judicial System Form MC-11D. (*Id.*). On February 25, 2014, Woods presented an Affidavit of Substantial Hardship on State of Alabama Unified Judicial System Form C-10. (*Id.* at 13-14). The Affidavit was marked "not approved." (*Id.*).

On April 22, 2014, less than one year after she was ticketed, Judge Atchison signed a Successful Termination of Probation form for Woods. (*Id.* at 17). Woods was never arrested related to the June 2013 offense, nor was a warrant for her arrest ever issued. (*See* Doc. # 165).

### D.    Plaintiff Susan Douglas

On January 14, 2012, Douglas was cited for driving while her license was suspended, a misdemeanor (Case No. TR 12-18), and for operating a vehicle without insurance, another misdemeanor (Case No.  TR 12-19). (Docs. # 165 at 19-40, # 165-1 at 2). The fine and court costs for these citations were $390 and $340, respectively. (*Id.*). All fines and costs associated

with these cases were paid and satisfied on or before March 15, 2013, more than two years before Plaintiffs filed their initial Complaint. (Docs. # 165 at 19-40, # 165-1 at 21, # 166 at 1; *see also* Doc. # 1). Judge Atchison signed notices of Successful Termination of Probation in both cases on April 9, 2013. (Doc. # 165-1 at 23).

On February 28, 2013, Douglas was cited for driving while her license was revoked, a misdemeanor (Case No. TR 13-95). (Doc. # 167 at 2). The fine and court costs totaled $416. (*Id.* at 5). On April 9, 2013, Douglas pleaded guilty. (*Id.* at 3-4). The Explanation of Rights Plea of Guilty form she signed was Unified Judicial System Form C-44B. (*Id.*). Judge Atchison placed Douglas on probation and ordered her to pay $110 per month until her financial obligations were met. (*Id.* at 5). Judge Atchison's Order of Probation also required Douglas to pay JCS $35 for each month of probation and a $10 registration fee. (*Id.*). In Judge Atchison's April 9, 2013 Order of Probation, Douglas was ordered to return to court on July 9, 2013 to show "completion of compliance." (*Id.*).

On April 10, 2013, the day following her initial appearance in Case No. TR-13-95, Douglas was arrested for attempting to elude a police officer, a misdemeanor (Case. No. WA 13-38). (Doc. # 168). Concurrently with this arrest, Douglas was cited for driving while her license was revoked (Case No. TR 13-260). (Doc. # 169 at 1-2). The fine and court costs totaled $713. (Doc. # 168 at 2). On May 28, 2013, Douglas pleaded guilty to attempting to elude. (*Id.* at 14-15). The Explanation of Rights Plea of Guilty form she and Judge Atchison signed was Unified Judicial System Form C-44B. (*Id.*). On July 9, 2013, Douglas pleaded guilty to driving while her license was suspended, also on Unified Judicial System Form C-44B. (Doc. # 169 at 5-6). Judge Atchison placed Douglas on probation and ordered her to pay $135 per month until her financial

obligations were met. (Doc. # 168 at 16). Judge Atchison's Order of Probation also required Douglas to pay JCS $35 for each month of probation and a $10 registration fee. (*Id.*).

On February 24, 2014, JCS Probation Officer Lisha Kidd signed a Petition for Revocation of Probation on behalf of the City Prosecutor, Richard Shuleva, due to Douglas's failure to pay her fines and failure to report to her probation officer on sixteen occasions. (*Id.* at 26). This petition related to Cases No. TR 13-26, TR 13-95, TR 13-262, and MC-13-39. (*Id.*). On March 10, 2014, Magistrate Seale executed an Alias Warrant for Douglas's arrest using Unified Judicial System Form MC-11A. (*Id.* at 17). On April 22, 2014, Judge Atchison signed an Order of Modification of Probation changing the status from "Hold" to "Warrant." (*Id.* at 18).

On May 13, 2014, Magistrate Seale issued an Order of Release from Jail on Unified Judicial System Form C-42 for Cases No. MC 13-39, TR 13-260, TR 13-262 and TR 13-95. (*Id.* at 19).[3] Douglas was released from jail and again placed on probation. (*Id.*). The day she was released, Judge Atchison signed an Order of Probation stating that if Douglas missed one appointment or payment, a warrant was to be issued for her arrest. (*Id.* at 20). On September 12, 2014, Judge Atchison signed a Successful Termination of Probation for Douglas on Case Nos. TR 13-260 and TR-13-95. (Doc. # 169 at 36).

On February 25, 2015, Magistrate Seale issued a Summons to Appear on Unified Judicial System Form MC-11D for Douglas to appear on March 10, 2015. (Doc. # 168 at 25). On March

---

[3] Prior to Douglas's Columbiana offenses, in 2011, she was ticketed in Shelby County, Alabama for driving with a suspended license (twice) and for operating a vehicle without a license, Shelby County Case Nos. TR 2011-11136, TR 2011-12929, TR-2011-12930. (Doc. # 175). In 2012, she was again ticketed in Shelby County, Alabama for driving with a suspended license, for driving with a revoked license, and for failing to display insurance, Shelby County Case Nos. TR 2012-512, TR 2012-1933, TR 2012-1934. (*Id.*). In 2013, Douglas had another Shelby County traffic citation for driving with a revoked license, Case No. TR -2013-3839. (*Id.*). On February 13, 2014, Shelby County issued an Alias Warrant for Douglas's arrest. (*Id.* at 31). Douglas was arrested on Shelby County's warrant on March 5, 2014. (*Id.* at 35). Douglas remained in the Shelby County Jail until her May 13, 2014 appearance in the Columbiana municipal court, to which she was transported from the Shelby County Jail. (Doc. # 172 at 194-95).

10, 2015, Judge Atchison signed a Successful Termination of Probation for Douglas on Case No. MC 13-39. (*Id.* at 31).

On April 12, 2013, two days after her arrest for attempting to elude a police officer, Douglas was again cited for driving while her license was revoked, Case No. TR 13-262. (Doc. # 170 at 2). On May 14, 2013, Douglas pleaded guilty. (*Id.* at 3-4). The Explanation of Rights Plea of Guilty form she signed was Unified Judicial System Form C-44B. (*Id.*). Fine and court costs totaled $366. (*Id.* at 2). Judge Atchison placed Douglas on probation and ordered her to pay $135 per month until her financial obligations were met. (Doc. # 167 at 5). Judge Atchison's Order of Probation also ordered Douglas to pay JCS $35 for each month of probation and a $10 registration fee. (*Id.*) In Judge Atchison's May 14, 2013 Order of Probation, Douglas was ordered to return to court in ninety days to show "completion of compliance." (Doc. # 170 at 5). As noted above, after her arrest by Shelby County, Douglas was released from Columbiana custody on May 13, 2014. (*Id.* at 7). Also on May 13, 2014, Judge Atchison reinstated Douglas to probation and ordered her to appear on August 12, 2014 to show compliance. (*Id.* at 8). On January 13, 2015, Judge Atchison signed a Successful Termination of Probation for Case. No. TR 13-262. (Doc. # 170-18).

### E.    Columbiana's Awareness of JCS Operations in Other Municipal Courts

On July 11, 2012, Judge Hub Harrington of the Circuit Court of Shelby County, Alabama, issued an order on a Motion for Preliminary Injunction filed in a case against the Town of Harpersville, Alabama. (Doc. # 193-13). Judge Harrington found that evidence had been presented showing, among other things, that certain actions had been impermissibly taken against certain defendants in the Harpersville municipal court, including incarceration, without any adjudication on the charges against them. (*Id.* at 2). Judge Harrington further found that

Harpersville defendants were placed on probation for many more than two years, incarcerated for failing to appear based on an "order" from JCS, and were interminably held in the county work release program. (*Id.*). In his July 11, 2012 Order, Judge Harrington set the Harpersville case for a preliminary injunction hearing and imposed certain conditions on the Harpersville municipal court. (*Id.* at 4-5).

Around this time, in Columbiana, the Mayor, the City Attorney, Judge Atchison, and Magistrate Seale met to discuss the Harpersville municipal court situation and whether to continue using JCS's services. (Docs. # 157-1 at 27-30, # 158 at 61-62, # 158-1 at 189-93). The group resolved to investigate whether Columbiana needed to change its probation practices involving JCS. (Docs. # 157-1 at 27-30, # 158 at 61-62, # 158-1 at 189-93). The Mayor ultimately asked Judge Atchison what he wanted to do, and Judge Atchison recommended that the municipal court continue using JCS's services. (Docs. # 157-1 at 27-30, # 158 at 61-62, # 158-1 at 189-93).

Eventually, in 2015, the Columbiana municipal court decided to restructure, and the JCS contract was terminated. (Doc. # 158 at 62-63).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.

Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.  Analysis

This case represents another chapter in a series of cases in which Plaintiffs have asserted claims relating to JCS's handling of probation services in various municipal courts around the state of Alabama. (Doc. # 143). Plaintiffs have asserted the following claims against the City under 42 U.S.C. § 1983:

> Count One - Denial of Due Process;
> Count Three - Violation of the Fourth Amendment;
> Count Five - Violation of the Sixth Amendment;
> Count Seven - Violation of the Eighth Amendment; and
> Count Nine - Denial of Equal Protection.

(Doc. # 143). Plaintiffs also assert a claim under Count Eleven for Declaratory and Injunctive Relief. (*Id.*). The case is presently before the court on the Motion for Summary Judgment filed by the City of Columbiana. (Doc. # 155).

The facts and legal arguments involved in this case are incredibly similar to those made in another case handled by this court, *Ray, et al. v. Judicial Corrections Services Inc. et al*., Case No. 2:12-cv-02819-RDP, which dealt with probation services provided by JCS in the municipal court in Childersburg, Alabama. Because of the similarities, the court reiterates certain controlling legal principles which it set forth in *Ray*:

> It is axiomatic that a municipality, such as the City, is only liable under Section 1983 when a municipal employee or agent undertakes an action in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. at 690. A plaintiff may establish the existence of a municipal "policy" by identifying "(1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*). In both instances, a plaintiff must illustrate that the governmental entity has "authority and responsibility over the governmental function in issue." *Id*. at 1330. "[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson Cnty., Ala*., 137 F.3d 1285, 1292 (11th Cir. 1998) (*en banc*). In analyzing whether a municipality had control over a policymaker, the court must determine whether the municipality controlled the policymaker with regard to the "particular area or function" at issue. *Grech*, 335 F.3d at 1331-32.

> "[S]tate law determines whether a particular official has final policymaking authority." *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996). "[S]tate law always should direct [courts] 'to some official or body that has the responsibility for making law or setting policy'" in a given area. *Id*. (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). Federal courts must respect the allocation of policymaking authority dictated by state law and "may not assume that final policymaking authority lies in some entity other than that in which state law places it." *Id*. (citing *Praprotnik*, 485 U.S. at 126, 131). In some cases, though, multiple officials or governmental bodies can share final policymaking authority. *Id*. at 1578.

> State law also establishes whether a particular official acts as a municipal policymaker or a state policymaker with regard to a particular issue. *See Turquitt*, 137 F.3d at 1288.

> []

Under Alabama law, "[t]he judicial power of the state is vested exclusively in a unified judicial system" that includes "such municipal courts as may be provided by law." Ala. Const. of 1901, Art. VI, § 139(a); Ala. Code § 12-1-2. This judicial power includes jurisdiction over criminal cases. Ala. Code § 12-1-3. The Alabama Supreme Court has been authorized to create procedural and administrative rules for municipal courts. *Id*. § 12-2-19(a). The Alabama Constitution requires municipal judges to possess law licenses and allows the state legislature to set other qualifications for municipal judges. Ala. Const. of 1901, Art. VI, § 145.

[]

Municipal court judges may suspend a sentence and place a defendant on probation for up to two years. Ala. Code § 12-14-13(a). A municipal court judge also may direct a probation officer or another suitable person to investigate the probationer. *Id*. § 12-14-13(b). He or she may impose suitable conditions of probation, including an obligation for the probationer "[t]o pay the fine and costs imposed or such portions thereof as the judge may determine and in such installments as the judge may direct." *Id*. § 12-14-13(d)(7).

A municipal court judge may defer a defendant's obligation to pay court costs or fines or direct the defendant to pay them in installments. Ala. R. Crim. P. 26.11(d). Fines are to be paid to the municipal court's clerk unless the municipal court directs otherwise. *Id*. 26.11(e). "Incarceration shall not automatically follow the nonpayment of a fine or restitution. Incarceration should be employed only after the court has examined the reasons for nonpayment." *Id*. 26.11(i)(1).

Alabama municipal courts are authorized to employ magistrates. See Ala. R. Jud. Admin. 18(I)(B). These magistrates possess the authority to issue arrest warrants, set bail, receive guilty pleas for certain cases, accept pleas of indigency, and appoint counsel for indigent defendants, among other duties. *Id*. 18(I)(B)(2). The Alabama Rules of Judicial Administration establish qualifications for magistrates and require them to take an oath of office. Id. 18(II)(A), (IV). The comments in the Alabama Rules of Judicial Administration clarify that magistrates are judicial officers authorized by the Alabama Constitution. Ala. R. Jud. Admin. 18, Comment. *See also* Ala. Const. of 1901, Art. VI, § 139(b) (permitting the Alabama legislature to "create judicial officers with authority to issue warrants").

Alabama municipalities are directed to provide facilities and other adequate support for Alabama municipal courts.16 Ala. Code § 12-14-2(a); *Wilkins v. Dan Haggerty & Assocs*., 672 So. 2d 507, 510 (Ala. 1995). Municipalities have the power to abolish municipal courts and to reestablish municipal courts. Ala. Code §§ 12-14-17(a); 12-14-19(a). They are required to pay the municipal court judge's salary. *Id*. § 12-14-33(a). Moreover, they are allowed to provide probation services, clerks, and magistrates to municipal courts. *Id*. § 12-14-2(a). The Alabama Supreme Court has held that municipalities may "contract with a private firm to aid in the collection of delinquent municipal court fines" to fulfill their duties to adequately support municipal courts. *Wilkins*, 672 So. 2d at 510.

*Ray v. Judicial Corr. Servs., Inc.*, 2017 WL 660842, at *10-11 (N.D. Ala. Feb. 17, 2017).

**A.    The Interaction of Woods and Douglas with the Municipal Court**

Alabama law provides that a municipal court judge may place a defendant on probation for up to two years. Ala. Code § 12-14-13(a). As discussed above in detail, neither Woods nor Douglas was on probation for more than two years for any one offense. A municipal judge may also impose suitable conditions of probation, including an obligation for the probationer "[t]o pay the fine and costs imposed or such portions thereof as the judge may determine and in such installments as the judge may direct." *Id*. § 12-14-13(d)(7). Judge Atchison signed the Orders of Probation which obligated Woods and Douglas to pay fines and costs, as well as to pay JCS $35 for each month of probation and a $10 registration fee. (Docs. # 165 at 5, # 168 at 16, # 170 at 5). Alabama law also provides that a municipal court judge may direct a probation officer or another suitable person to investigate the probationer. *Id*. § 12-14-13(b). In this regard, Judge Atchison's Orders placed Woods and Douglas on probation and ordered compliance with the terms of their probation, which included "mak[ing] a full and truthful report to [their] Probation Officer" and paying JCS $35 for each month on probation. (Docs. # 165 at 5, # 168 at 16, # 170 at 5).

**B.    The Municipal Court Judge Did Not Act as a City Policymaker**

Plaintiffs contend that their constitutional rights were violated in their interactions with the municipal court and JCS. Plaintiffs argue that a jury could conclude that the actions taken by Judge Atchison and JCS are attributable to the City. However, the issue of who may be a responsible policymaker for a particular policy is a question of state law, not a question of fact for a jury to decide. *Praprotnik*, 485 U.S. at 124. As the court held in *Ray*, "Alabama law demonstrates that the policymaker responsible for the policies that led to JCS's conduct against

15

Plaintiffs was the Municipal Court's judge, Judge [Atchison]. State law granted Judge [Atchison] the authority to sentence defendants to probation, to set probation conditions, to impose fines on defendants, and to establish payment plans for defendants when they could not immediately pay the fines imposed." *Ray*, 2017 WL 660842, at *12 (citing Ala. Code § 12-14-13(a), (d); Ala. R. Crim. P. 26.11(d)). "Likewise, Judge [Atchison] was responsible for determining an appropriate punishment when an individual failed to pay fines imposed on him or her." *Id.* (citing Ala. R. Crim. P. 26.11(i)(1)).

Alabama law delegates judicial authority, including municipal court authority, to the *state judicial system:*

> [T]he Alabama Constitution[] designates municipal courts as courts under the unified judicial system. Ala. Co[n]st. of 1901, Art. VI, § 139(a). *See Turquitt*, 137 F.3d at 1288 (relying, in the first instance, on the Alabama Constitution's designation of a sheriff as a state official). The Alabama Supreme Court, a state agency, held the authority to create procedural and administrative rules that regulated the Municipal Court. Ala. Code § 12-2-19(a). *See Turquitt*, 137 F.3d at 1289 (relying on a state agency's control of rules regarding the policy at issue as evidence that the sheriff had acted as a state policymaker). And it is state law that provides the Municipal Court authority to impose probation on defendants, not the City's municipal code. *See* Ala. Code § 12-14-13(a), (d).

*Ray*, 2017 WL 660842, at *13 (footnote omitted). Thus, the state controls the operation of the court system in Alabama, including the municipal court system. "[L]ocal governments [such as municipalities] can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control." *Turquitt*, 137 F.3d at 1292. In *Turquitt*, the *en banc* Eleventh Circuit emphasized the importance of control by characterizing the appropriate question as "which government body, under state law, had direct control over how the [entity at issue] fulfilled [the duty at issue]." *Turquitt*, 137 F.3d at 1292.

Although Alabama law imposed an obligation on the City to pay for probation services for the municipal court, *see* Ala. Code § 12-14-2(a), it did not grant the City any control over the

municipal court's judicial functions. *See* Ala. Const. of 1901, Art. VI, § 139(a) (placing the state's judicial power in the hands of the unified judiciary branch). Alabama law provides that it is the state that has direct control over the municipal courts. Therefore, under binding precedent, the City simply cannot be liable under § 1983 for actions taken by the municipal court. *Turquitt*, 137 F.3d at 1292; *see also McMillian*, 88 F.3d at 1577 ("Federal courts 'may not assume that final policymaking authority lies in some entity other than that in which state law places it." (citing *Praprotnik*, 485 U.S. at 126, 131)).

### C. Plaintiffs Have Not Shown They Were Injured by a City Policy or Custom

Plaintiffs contend that certain facts in this case distinguish it from *Ray*. Plaintiffs first urge that "[b]y virtue of the contract, the City and JCS combined and conspired in a joint effort to extort persons unable to pay fines and court costs." (Doc. # 191 at 38). As in *Ray*, Plaintiffs argue that the alleged constitutional violations here were the result of the governmental custom or practice because the City "embraced the JCS system in fine collection for almost ten years." (*Id.* at 39). However, they also argue the JCS probation system became a City custom or policy because the City continued to use JCS in the municipal court after the Mayor and other City officials became aware of the alleged constitutional violations in other municipalities. Plaintiffs assert that, "unlike determining who is a policymaker, the question of whether there is a municipal policy or custom for purposes of § 1983 is 'an ad hoc determination made on a case-by-case basis." (*Id.* at 36 (quoting *Sword & Shield: A Practical Approach to Section 1983 Litigation* 4th Edition, p. 292).

In granting summary judgment to Childersburg in *Ray*, the court specifically noted that Plaintiffs had "not presented Rule 56 evidence indicating that a final policymaker for the municipality knew of the alleged unconstitutional conduct by JCS or the Municipal Court when

permitting the JCS-City Contract to be renewed or when renewing Judge Ward's contract with the City." *Ray*, 2017 WL 660842, at *16. Here, Plaintiffs have presented Rule 56 evidence that the City knew of Judge Harrington's Order regarding the Harpersville municipal court and of Woods's allegations of unconstitutional conduct in the "To Prison for Poverty" video, yet decided to continue using JCS's services. (Doc. # 191 at 58). They argue that, by continuing to use JCS with full knowledge of these matters, City officials essentially ratified the JCS system as a City policy or custom. And, under these circumstances, they argue, there is a sufficient basis to attribute the continuation of those alleged unconstitutional customs or practices to the City. The court disagrees.

The Rule 56 evidence does not support the conclusion that the constitutional improprieties which allegedly infected the Harpersville probation system were present in Columbiana. For example, the following facts distinguish the Columbiana municipal court probation system from the Harpersville system condemned by Judge Harrington:

1.      *In the Columbiana municipal court*, the Rule 56 evidence shows that there was an adjudication or plea on the charges against Woods and Douglas (guilty pleas) before any sentence or probation was imposed. (*Compare* Doc. # 193-13 at ¶ 1, *with* Docs. # 165 through 170).

2.      *In the Columbiana municipal court*, the Rule 56 evidence shows that if an offender could pay the ordered fine within seven days (as opposed to one day in Harpersville), JCS was not involved in their probation and payments could be made through Magistrate Seale's office. (*Compare* Doc. # 193-13 at ¶ 2, *with* Doc. # 160 at 31, 59-60).

3.      *In the Columbiana municipal court*, the Rule 56 evidence shows that defendants were not incarcerated without an order or warrant from Judge Atchison, and they were not

incarcerated for a failure to pay fines. (*Compare* Doc. # 193-13 at ¶ 3, *with* Docs. # 165 through 170).

4.    *In the Columbiana municipal court*, there is evidence that a warrant was issued for Douglas's arrest, but it was only issued after a Petition for Revocation of Probation on behalf of the City Prosecutor, Richard Shuleva, was filed due to Douglas's failure to pay her fines and failure to report to her probation officer on sixteen occasions relating to four separate offenses. (Doc. # 168 at 26). No orders were issued by JCS. (*Compare* Doc. # 193-13 at ¶ 4, *with* Doc. # 168 at 26).

5.    *In the Columbiana municipal court*, the Rule 56 record contains no evidence that new criminal charges were imposed for contempt of court. (*Compare* Doc. # 193-13 at ¶ 5, *with* Docs. # 165 through 170).

6.    *In the Columbiana municipal court*, the Rule 56 record contains no evidence that any defendant was placed on probation for any offense for more than two years. (*Compare* Doc. # 193-13 at ¶ 7, *with* Docs. # 165 through 170).

The undisputed record evidence simply does not show that Columbiana's municipal court system was run in a manner similar to that found by Judge Harrington to exist in Harpersville. Therefore, evidence that Columbiana continued to use JCS's probation services after becoming aware of the alleged constitutional violations in Harpersville is not a sufficient justification to hold the City of Columbiana responsible for the actions of the Columbiana municipal court by way of a *City* custom or policy.

Alabama state law, including its Constitution, provides that the state controls the operation of the court system in Alabama, including the municipal courts. The City of Columbiana, therefore, "can never be liable under § 1983 for the acts of [the court]." *Turquitt*,

137 F.3d at 1292. Plaintiffs have not presented evidence justifying the application of any exception to this rule. Therefore, the City is entitled to summary judgment on Plaintiff's claims under § 1983 premised on conduct occurring in the municipal court.

### D. Plaintiffs Have Not Asserted Conspiracy Claims Against the City

In their Opposition to the City's Motion for Summary Judgment, Plaintiffs included a section arguing that the City conspired with JCS to violate Plaintiffs' constitutional rights. (Doc. #191 at 53-60). However, none of the conspiracy claims in Plaintiffs' Third Amended Complaint are asserted against the City. (*See* Doc. # 143 at 38, 49, 54, 59, 65). Each of those claims is asserted against JCS, CHC, and CCS based on their independent acts and "in conspiracy with Columbiana's *Municipal Court*." (*See* Doc. # 143 at 38, 49, 54, 59, 65) (emphasis added). As discussed above, the municipal court's actions are not attributable to the City. Therefore, Plaintiffs have not asserted conspiracy claims against the City.

Even if Plaintiffs had asserted a conspiracy claim against the City, they have failed to present record evidence supporting the essential elements of such a claim. To establish a conspiracy claim under § 1983 against a governmental entity, a plaintiff must allege three elements: "(1) a violation of [his] federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an [underlying] actionable wrong." *Williams v. Fulton County School District*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga.2016). A "[c]onspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Plaintiffs have presented no record evidence showing that policymakers for the City and JCS "reached an understanding" to deny Plaintiffs their constitutional rights. Therefore, and in any event, even if Plaintiffs had

asserted a conspiracy claim against the City, summary judgment would still be appropriate as to that claim.

### E. Plaintiffs' Claims for Declaratory and Injunctive Relief

In Count Eleven of the Third Amended Complaint, Plaintiffs assert a claim for declaratory and injunctive relief. At the outset, it is important to note that "injunctive relief" cannot be pleaded as a separate claim because it is not a cause of action but a form of relief. *In re Managed Care Litig.*, 2009 WL 7848517, at *7 (S.D. Fla. Mar. 27, 2009) (citing *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1280 n. 3 (S.D. Fla. 2007). Therefore, the court interprets Count Eleven as one for declaratory judgment that seeks an equitable remedy of injunctive relief.

Plaintiffs summarize their claim as follows: "A real controversy exists between the parties concerning the validity of the JCS[] attempt with Columbiana to bind its municipal court and the legality of the actions taken in contracting with JCS, such that declaratory relief is appropriate." (Doc. # 143 at ¶ 328). Among other claims for relief, Plaintiffs seek a declaration that the contract between the City and JCS is void, and that certain aspects of the contract are illegal. (Doc. # 143 at ¶¶ 329-347).

However, Plaintiffs currently lack standing to challenge the validity of that contract because it is undisputed that the City terminated its agreement with JCS in 2015. (Doc. # 157-1 at 58). Plaintiffs have presented no evidence that there is "a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). It is undisputed that the JCS contract has been terminated and that JCS is no longer operating in Alabama. The mere possibility of similar conduct by the City does not present a controversy that the court may resolve through a declaratory judgment. *See Malowney*, 193 F.3d at 1348; *see also Ray*, 2017

WL 660842 at * 19-20. For these reasons, the City is entitled to summary judgment on Plaintiffs' claims seeking injunctive relief, and Plaintiffs' request for a declaratory judgment is due to be dismissed for lack of standing.

## IV.     Conclusion

For all of the foregoing reasons, the City is entitled to judgment as a matter of law on Plaintiffs' claims seeking to hold the City liable for the municipal court's alleged failure to comply with Alabama law and the U.S. Constitution when conducting judicial functions. The City of Columbiana's Motion for Summary Judgment is due to be granted. A separate order will be entered.

DONE and ORDERED this June 5, 2019.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE